128

## PETER DALE v. FRED BERG AND OTHERS.[1]

January 27, 1950.

No. 34,840.

*Fred K. Gage,* for appellant.

*Wilbert C. Nelson* and *Lauerman & Pfeiffer,* for respondents.

[1]Reported in 40 N. W. (2d) 851.

THOMAS GALLAGHER, JUSTICE.

Action for an accounting of defendants' operation of a general garage, repair shop, automobile and farm machinery sales and service business in Fairfax, and of certain farm property, all in Renville county, for the period between June 12, 1938, and April 10, 1942, and for an order setting aside a certain stipulation for settlement entered into between plaintiff and defendants on April 10, 1942, on the ground that plaintiff's execution thereof was induced by fraud and misrepresentation on the part of defendants.

The trial court made findings and conclusions and order for judgment denying the relief sought by plaintiff. This is an appeal from an order in substance denying his subsequent motion for a new trial.

Between 1929 and June 12, 1938, plaintiff was engaged in the operation of a general garage and an automobile and farm machinery sales business at Fairfax. During the years 1937 and 1938, he also operated two rented farms in Renville county and kept certain farm machinery thereon.

On June 12, 1938, being heavily in debt, plaintiff disappeared from Fairfax without stating where he intended to go or when he intended to return. He left a letter in the garage addressed to defendant Fred Berg, then his bookkeeper, in which he stated:

"Fred—

"Take over the business and *pay all checks*. The check book shows the amount paid on farms and *you sell and pay every one*. Collect and handle all affairs as tho they where [*sic*] your own. Ask Carl Ruud and Henry to help you *settle up all affairs*. I'm sorry I must leave but I see no other way out. I'm taking Chrysler as I have no other means of getting away. Do the best you can Fred as *I know there is plenty to pay every one*. Make sure you dont overlook any thing. Good bye to every one. Tell mother I'm dreadfully sorry I have to do this. Goodbye to mother and Clara.

"Peter Dale

"P. S.

"Make sure the crops are taken care off [*sic*]—and *sell and pay every one.*

"Fred—

"By all means get over to the Bank the first thing Monday morning and *see that all checks are taken care off* [*sic*]. Dont let Commercial Credit Co. start trouble as it will be much worse later. I know you can do it Fred and you will not loose [*sic*] anything by it.

"Peter"

(Italics supplied.)

At the time of plaintiff's disappearance, all fixtures and equipment of the garage and farm implement business, including the stock in trade, were subject to a past-due chattel mortgage in favor of the Citizens State Bank of Fairfax. The rental on the farms he was operating had not been paid. There was no cash in the till of the garage. His bank account was overdrawn, with outstanding checks in the sum of $1,057.

Defendants, who were creditors of plaintiff, then formed a partnership for the purpose of conducting the business. Shortly thereafter the bank commenced foreclosure of the chattel mortgage. After the period of redemption in connection with the foreclosure had expired, defendants, with their own funds, purchased all property covered by the mortgage from the bank, and thereafter used all of the same in connection with their operation of the business.

During 1938, defendants harvested the crops on plaintiff's rented farms, receiving a gross return therefrom of $1,736.20, of which all except $26 was used in payment of rental, expenses of harvesting, and in liquidation of plaintiff's debts.

Plaintiff returned to Fairfax in July 1939. He then went back into the garage and implement business as a salesman in the employ of defendants and continued as such until April 10, 1942. At that time he entered into the challenged stipulation with defendants, whereunder he was to sell to defendant Fred Berg his interest in certain farm property in Renville county, which he had acquired by inheritance, for the sum of $12,000, the proceeds of such sale to

be used in liquidation of certain of plaintiff's debts described in the stipulation, and to receive from defendants a bill of sale to certain described assets in the garage and implement business and to resume management and ownership thereof.

Defendants at that time represented to plaintiff that the business had been operated at a loss and was still heavily in debt. This, plaintiff now asserts, was false, and that by reason of such false statements he was induced to enter into the stipulation described.

The stipulation provides in part:

### "STIPULATION FOR SETTLEMENT

"This stipulation, made and entered into this 10th day of April, 1942, by and between Peter Dale, hereinafter referred to as the first party, and Fred Berg, R. J. Wellner, Henry Dale and Carl Ruud, individually, and as co-partners, doing business under the firm name and style of Fairfax Motor Company, hereinafter referred to as the second parties, and W. B. Frank, trustee.

"WITNESSETH, That whereas the first party has heretofore asserted and alleged a claim against said second parties; and

"WHEREAS, The said second parties have summarily denied said alleged claim, but desire to settle the differences, in which desire first party concurs, and

"So THEREFORE, The parties hereto, in consideration of the mutual covenants * * * do hereby stipulate and agree to settle their differences as follows:

"I

\* \* \* \* \*

"1. That the first party is now the owner of an undivided one-half (½) interest in and to the tracts or parcels of real estate lying and being in the County of Renville, State of Minnesota, described as follows, to-wit:—

"The South Half (S ½) of the Southeast Quarter (SE ¼), Section Twenty-three (23), the South Half (S ½) of the Southwest Quarter (SW ¼), Section Twenty-four (24), and the North Half (N ½) of the Northeast Quarter (NE ¼), Section Twenty-six (26), Township One Hundred Twelve (112), Range Thirty-three (33),

containing two hundred forty (240) acres, more or less, according to the United States Government Survey thereof.

"2. That said real estate is subject to the following encumbrances: [liens and judgments are here set forth totaling $7,895.96].

"3. That the said first party is also indebted to Henry Dale upon an unsecured promissory note in the amount of Eight Hundred Twenty and 00/100 Dollars ($820.00), plus interest.

"4. That the said second parties, doing business as the Fairfax Motor Company, have, during the operation of said business, created the following debts: [here follows a list of debts, principally notes, totaling $16,100, including notes to defendants Fred Berg and R. J. Wellner].

"5. That the assets of the Fairfax Motor Company consists of stock in trade of the approximate value of Four Thousand and 00/100 Dollars ($4,000.00); fixtures of the approximate value of Four Thousand and 00/100 Dollars ($4,000.00); accounts receivable of the approximate value of Four Thousand and 00/100 Dollars ($4,000.00); notes receivable of the approximate value of One Thousand Six Hundred and 00/100 Dollars ($1,600.00); and used cars and farm machinery of the approximate value of Four Thousand and 00/100 Dollars ($4,000.00).

"6. That the said Fairfax Motor Company has no outstanding open accounts payable.

"II

\* . \* \* \* \*

"2. \* \* \* The said second parties, co-partners, doing business as the Fairfax Motor Company agree to execute and deliver unto Carl Ruud and W. B. Frank, as co-trustees, a bill of sale of all of the assets and property of the said Fairfax Motor Company, not conveyed to first party, more particularly described in II-1-a to f, in trust for the following uses and purposes, to-wit:—

"a. The bill of sale in trust shall provide that the purpose of the creation of the trust is to convert into cash so much of the trust property as is necessary to retire said unpaid items; that said conversion into cash shall be accomplished with reasonable dispatch;

not, however, with such haste so as to cause the disposition of any article or the satisfaction of any claim at less than its true and full value, without reasonable and just cause for so doing being shown; that the trustees shall at once commence their duties and shall keep accurate and complete accounts of their doings as trustees; that the first party shall have the right and privilege of examining said accounts at all reasonable times; that the cash received by the trustees shall be deposited by them into a trust account, and that they shall disburse said cash only in the payment and retirement of the unpaid items as hereinafter set forth and the expenses of the trust.

"b. The trustees shall disburse the trust moneys upon the unpaid items in the following order: [here follows a list of the various debts which the trustees were to pay with the proceeds derived from the sale of such assets].

\*     \*     \*     \*     \*

"3. To execute and deliver to Fred Berg a bill of sale of truck parts of the cost value of One Hundred and 00/100 Dollars ($100.00), to be selected by him.

"III

"The said Fred Berg agrees:

"1. To purchase the land described in I-1 herein from said first party at a price of Twelve Thousand and 00/100 Dollars ($12,000.00).

"2. To purchase from the Fairfax Motor Company truck parts described in II-1-g herein at cost price to the value of One Hundred and 00/100 Dollars ($100.00).

"3. To apply the total sum of Twelve Thousand One Hundred and 00/100 Dollars ($12,100.00) paid as above, as follows: [here follows a list of promissory notes to be paid and certain debts due said Fred Berg to be cancelled by him].

\*     \*     \*     \*     \*

"IV

"The said R. J. Wellner agrees as follows:

"1. To cancel in full and satisfy his note from the Fairfax Motor Company described in I-4-e herein.

"V

"The said Henry Dale agrees as follows: .

"1.  To cancel and satisfy in full his share of the judgment described in I-2-g herein.

"2.  To cancel in full and satisfy the promissory note from said first party described in I-3 herein.

"VI

"The said Carl Ruud agrees as follows:

"1.  To cancel in full and satisfy his share of the judgment described in I-2-g herein.

"2.  To assume the position of trustee of the property conveyed to him as is provided in II herein and to exercise said trust to the best of his ability and in compliance with all provisions of this agreement and the deed of trust regarding the trust matter.

\*    \*    \*    \*    \*

"VIII

"The said first party agrees:

"1.  To release and discharge forever said second parties and their heirs, individually and as co-partners, doing business under the firm name and style of Fairfax Motor Company, from all claims and demands whatsoever, to the date of this agreement.

\*    \*    \*    \*    \*

"4.  To convey to the said Fred Berg by good and sufficient Warranty Deed his interest in the real estate described in I-1 herein."

Attached to the stipulation was a trust deed, providing that defendants thereby sold and conveyed to Carl Ruud and W. B. Frank, as trustees, certain goods, chattels, and personal property described therein, consisting of the stock, notes receivable, and certain other assets belonging to the garage and implement business, in trust for the purpose of converting such assets into cash and paying up certain described judgments and liens against the land conveyed by plaintiff to defendants, and a certain promissory note in favor of one Ervin Peterson, as set forth in the stipulation above referred to. It further provided that the trustees should furnish to plaintiff a full and complete accounting of the trust, and that any balance

remaining therein should become his sole property. At that time, defendants made, executed, and delivered to plaintiff a bill of sale to all the remaining assets of the business, with the exception of those transferred to the trustees.

Plaintiff thereupon resumed management of the business. The farm was transferred to Fred Berg, and the full purchase price of $12,000 was used in payment of the described judgment liens and debts. The trust assets were actually delivered to plaintiff by the trustees and sold by the former, the proceeds of the sale being delivered to the trustees, who used the same in payment of the obligations described in the trust instrument.

Prior to execution of the stipulation, plaintiff and his attorney had negotiated with defendants for several months. They had called at the garage office and thoroughly examined all of defendants' books and records, which were subsequently submitted in evidence. The terms and conditions upon which defendants would transfer the assets of the business back to plaintiff were repeatedly outlined in detail, both to plaintiff and his counsel. They were advised that the business was indebted in the sum of $16,100 and were given the names of the parties to whom such debts were owing. Defendants were not anxious to dispose of the business unless they could do so without being obligated to pay the indebtedness described.

Plaintiff sought to have the assets and business returned to him free of all charges and without obligation on his part, a demand which was summarily refused by defendants. It was only subsequent to this and after much further investigation by plaintiff and his counsel that the stipulation or agreement was entered into between the parties. It was drawn by plaintiff's counsel and remained in the latter's office for several days. for plaintiff's examination before it was finally executed by him.

It is undisputed that none of the defendants, who had been creditors of plaintiff at the outset of the transaction, were ever fully repaid their indebtednesses or compensated for their time in connection with the conduct of the business during plaintiff's absence.

Defendant Fred Berg had kept the books of the business throughout defendants' operation of it. The method followed was the same as that of plaintiff during his operation of the garage prior to his departure. Berg testified that such books constituted a complete record of every transaction which took place throughout defendants' operation of the business, and that all receipts therefrom had been deposited in the Citizens State Bank of Fairfax in the garage account, the same bank in which plaintiff had always made deposits from the business.

The final culmination of the entire transaction resulted in the necessity of Berg's accepting a note of $1,500 for his indebtedness, which is still unpaid.

Plaintiff continued to operate the business for approximately four years subsequent to the execution of the stipulation before instituting this action challenging it. During all this time he had access to defendants' records of the transactions that had taken place, but he raised no issue with respect thereto prior to these proceedings.

■ We have before us a question of fact. The trial court specifically found:

"That there is no evidence to justify this court in finding that defendants made a profit while operating said garage business, or made false, fraudulent and untrue representations to plaintiff, or that the business operations of said garage business have been wilfully withheld and concealed from plaintiff by these defendants."

There is substantial evidence to support this finding. To support plaintiff's contentions, the record would have had to disclose evidence of fraud and misrepresentation on the part of defendants inducing him to execute the stipulation. We have diligently searched it and fail to find such evidence. It definitely appears that defendants disclosed to plaintiff all transactions in their conduct of the business, both during his absence and while he was employed by them as a salesman. The books of account clearly establish that the business had been operated at a substantial loss, and that at the

time the negotiations commenced defendants had borrowed up to $16,100.

Likewise, the record is clear with reference to defendants' operation of plaintiff's two rented farms. It was necessary for defendants to advance their own funds to pay delinquent rental and other charges thereon, and, after payment thereof and the expenses of harvesting and like items, the small balance remaining was turned in to the garage business and accounted for therein.

There is no evidence that defendants, or any of them, converted any property of plaintiff or of the garage business to their own use. On the contrary, it appears that each of them lost substantially because of plaintiff's failure to live up to his obligations.

Plaintiff's contribution to the settlement consisted of a conveyance of his undivided one-half interest in 240 acres of land, which had a market value of between $60 and $100 per acre and which was subject to certain liens or encumbrances. Defendant Berg paid for this land at the full rate of $100 per acre, and the entire proceeds of the sale were used in the cancellation of plaintiff's notes, judgments, liens, and other obligations in accordance with the stipulation.

All facts and circumstances with reference to defendants' operation of the business were fully disclosed to plaintiff and his counsel. They were given ample time to examine the books and ascertain whether the entries therein or the representations made with respect thereto were true or false. A list of creditors was furnished them. Nowhere throughout the record does it appear that plaintiff challenged any of such claims or questioned any of such creditors. With full information available to him, with the books and records before him, with the advice and counsel of his attorney, and with his personal knowledge of the business, he deliberately entered into the stipulation for settlement, fully apprised of all its terms and conditions.

We hold that such evidence amply supports the findings of the trial court that no fraud or misrepresentation on the part of defendants induced plaintiff to execute the stipulation for settlement.

Accordingly, the order denying his motion for a new trial must be affirmed.

■ Plaintiff assigns as error the admission in evidence over his objection of certain testimony by Mr. A. R. Quast, an officer of the Citizens State Bank of Fairfax, called as a witness for defendants, as to the value of the equipment and stock covered by the chattel mortgage to the bank. It is undisputed that all of such equipment and stock was subsequently turned in to the garage business by defendants and either returned to plaintiff or sold at the fair market value thereof and the proceeds turned in to the garage business. In consequence, if there was error in connection with the admission of such testimony, it was immaterial.

■ It is also urged that the trial court erred in permitting the testimony of Mr. Wilbert C. Nelson, former attorney for plaintiff, with reference to conversations between plaintiff and such counsel prior to the execution of the stipulation. An examination of Mr. Nelson's testimony indicates that he testified primarily as to acts performed by him and his client, and not as to conversations between them. In substance, he told of his going with plaintiff to the garage to examine the books, of his taking the books to his own office for further examination, his examination of them there, and the date and place of the execution of the stipulation by the parties thereto. All such testimony was admitted without objection on the part of plaintiff. Subsequently, when questions were asked as to certain communications between him and plaintiff, the trial court sustained objections thereto. Thereafter, however, certain of such conversations were related. In substance, they were to the effect that before the stipulation was signed by plaintiff defendants had represented to plaintiff's counsel, and he in turn had advised plaintiff, that the business was indebted to certain creditors in the sum of $16,100, and that plaintiff, in consequence, had all such information before he signed the stipulation.

The record establishes that all such conversations related to evidence which otherwise was admitted without objection. All the facts involved were recited in the stipulation itself, and plaintiff's

execution thereof, after lengthy examination of the same, indicated his knowledge of the very facts which he learned in the challenged conversation with his counsel. In consequence, any error in connection with the admission of such testimony is harmless. The law is well established that a new trial should not be granted for error in the admission of evidence of facts otherwise satisfactorily proved by admissible evidence. See, 5 Dunnell, Dig. & Supp. § 7184, and numerous cases cited.

The order appealed from is affirmed.